IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MICHELLE ALFORD,

     Plaintiff,

v.

HILL TOP RESEARCH
INCORPORATED d/b/a CLIANTHA
RESEARCH, a Florida profit corporation,

     Defendant.

Case No. 8:24-CV-00657

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff MICHELLE ALFORD ("Plaintiff" or "Alford") sues Defendant,

HILL TOP RESEARCH INCORPORATED d/b/a CLIANTHA RESEARCH

("Defendant" or "Cliantha"), and states as follows:

## CAUSES OF ACTION

1.     This is an action brought against Defendant for unlawful discrimination

and retaliation practices under Title VII of the Civil Rights Act of 1964 (Title VII), the

Florida Civil Rights Act (FCRA), and 42 U.S.C. § 1981. The action seeks declaratory,

injunctive, and other equitable relief as well as monetary damages, costs, and

attorney's fees.

## PARTIES

2.     Plaintiff Michelle Alford is an individual and resident of Florida who

resides in Pinellas County, Florida.  At all material times, Alford was employed by

Defendant, Hill Top Research Incorporated d/b/a Cliantha Research as a Clinical

Research Assistant (CRA). Alford performed work for the Defendant in Pinellas County, Florida.

3. Defendant Hill Top Research Incorporated d/b/a Cliantha Research ("Defendant" or "Cliantha") is a Florida profit corporation and the registrant of the fictitious name "Cliantha Research". Cliantha is a full-service Clinical Research Organization.

## JURISDICTION AND VENUE

4. Subject matter jurisdiction is proper in this Court under 28 U.S.C. § 1331. The Court has supplemental jurisdiction over the state law claims per 42 U.S.C. § 1367 as the Florida Civil Rights Act claims are so related to the federal claims that they form part of the same case or controversy.

5. Personal jurisdiction and venue are proper in the United States District Court for the Middle District of Florida because at all times material, Defendant resided in and/or conducted business in, and significant events giving rise to Plaintiff's claims occurred within, the Florida counties comprising the U.S. District Court, Middle District of Florida.

6. Venue is proper in the Tampa Division under Local Rule 1.02(b)(5) since the action accrued in Pinellas County, Florida over which the Tampa Division has jurisdiction.

7. All conditions precedent to maintaining this action have occurred, been performed, are excused, and/or have been waived or repudiated.

## STATUTORY COVERAGE AND ELIGIBILITY

8.   At all times material, Defendant was an "employer" within the meaning of Fla. Stat. § 760.02(7) and 42 U.S.C. § 2000e who had fifteen (15) or more employees in each of twenty (20) or more calendar weeks in the current or preceding calendar year.

9.   At all times material, Defendant was subject to the proscriptions against race, ethnicity, and color discrimination as well as retaliation under 42 U.S.C. § 1981.

10.   On or around September 21, 2022, Plaintiff filed a charge of discrimination and retaliation. The Charge was filed with the Equal Employment Opportunity Commission (EEOC) and deemed dual filed with the Florida Commission on Human Relations (FCHR). The EEOC issued its Dismissal and Right to Sue letter on December 15, 2023. The FCHR failed to make any determination on the Charge within one hundred eighty (180) days after filing of the charge.

## GENERAL ALLEGATIONS

11.   On or around September 28, 2021, Plaintiff became employed with Cliantha as a Clinical Research Assistant (CRA).

12.   Plaintiff is white and Puerto Rican.

13.   Plaintiff reported directly to Lissette Fletcher ("Fletcher"), her immediate supervisor and Clinical Research Coordinator.

14.   Within Plaintiff's first week of employment, she immediately noticed obvious and severe divisions among the employees based on race. The Hispanic employees in the facility openly discriminated against the African-American

employees. A Hispanic coworker, Ermarie, was speaking about Plaintiff on her second day on the job behind her back to another employee in Spanish that Plaintiff was a "kiss-ass", that Fletcher was using her, and that she [Plaintiff] did not even understand it. Ermarie did not realize Plaintiff was fluent in Spanish. Plaintiff reported this to Fletcher, and Ermarie resigned.

15.     On a daily basis, Plaintiff observed Hispanic employees make derogatory comments about African-American employees, "subjects" (volunteers for clinical studies), and coworkers specifically targeting their race, color, and ethnicity. For example, when a subject or coworker would walk into the room, the Hispanic employees would look at each other and rub the tops of their own hands, referring to the color of the person's skin and to alert to each other that an African-American person entered the room, which was a cue to only speak Spanish from that point on.

16.     The facility was segregated—the Hispanic employees would not allow the African-American employees to sit with them at the same table. When Plaintiff spoke with or sat at a table in the breakroom with African-American coworkers, she would be shunned by the Hispanic coworkers for the rest of the day: they would pretend Plaintiff was not there and would not respond to her when she spoke to them. This group of employees began to treat Plaintiff worse because she would not participate in the segregated culture.

17.     It bears noting that non-Hispanic employees were not discouraged from speaking with or associating with the African-American employees—it was only Plaintiff as a Hispanic employee who was treated worse for socializing with the

African-American employees, as if Plaintiff were a traitor to the Hispanic group by doing so.

18.    Plaintiff complained about the racist work environment to both Fletcher and the Director, Tina Grossman ("Grossman"), several times. Each time Plaintiff complained about the racism, Fletcher and Grossman would explain that the culture had been like that for a long time and that there is not much that can be done.

19.    Plaintiff noticed that Tatiana Martinez ("Martinez"), a Hispanic employee who became interim director replacing Tina Grossman on March 9, 2021, was doing the hiring, she would only hire Hispanic employees. When African-American employees were hired, the Hispanic employees treated it as a threat and would do everything they could to try and get the person fired such as making up a terminable offense or creating fake job duties.

20.    On March 11, 2021, Plaintiff and Martinez were working a study together and were in the kitchen eating. Martinez brought up that some of the other employees went to Cliantha's new President, Stuart Goldblatt ("Goldblatt"), and complained that the Hispanic employees were racist. Plaintiff told Martinez that she agreed that they are racist and prejudiced all the time. Martinez looked at Plaintiff and scoffed and said "no they are not." Plaintiff said "Yes, they are, and it's very obvious, and they make everyone uncomfortable." Plaintiff explained she knew this to be true because when she first started her employment, they were talking badly about her, not realizing she understood and spoke Spanish fluently. Martinez's reaction to this was to turn around and walk out of the room. Martinez dropped the issue, but thereafter

CALCIANO PIERRO, PLLC

she started nitpicking about Plaintiff's work and singling out Plaintiff for performance issues, generally treating her less favorably and retaliating against her for opposing discrimination.

21.     Prior to this point, Plaintiff had received only praise from her supervisors. Martinez's mother, Sandra Martinez ("Sandra"), also worked with Plaintiff and was under Martinez's direct supervision. Sandra would regularly make comments disparaging African-Americans employees and subjects. Between Sandra and Martinez, every little thing Plaintiff did was scrutinized or "wrong," and Plaintiff was told she was not doing her job correctly. Plaintiff began taking photos to document that tasks were completed and completed properly because Sandra and Martinez would simply lie about Plaintiff's performance and whether she was completing tasks.

22.     On March 16, 2022, Plaintiff received an email from Martinez requesting a meeting. Plaintiff agreed to the meeting the next day March 17, 2022 at 1:00 p.m.

23.     Plaintiff arrived at the meeting on time and was pulled into a room with Martinez and two employees on Skype from Cliantha's Canada location, Avinash Kaler ("Kaler", an HR Generalist from the corporate office) and Natalia Najera ("Najera", the Director of Operations for North America). They told Plaintiff there were allegations made against her that she was allowing the subjects to go outside and smoke marijuana. Plaintiff explained that never happened and that she wanted them to pull the camera footage to confirm that it did not happen. They stated that they had looked at the cameras and could not see anything but wanted Plaintiff to admit to it anyway. Plaintiff kept telling them it never happened and she would never do that, yet

they kept reiterating that Plaintiff needed to tell the truth even after she told them multiple times it never happened.

24.    Around this time Martinez informed Plaintiff that she was going to be taken off the schedule pending investigation.

25.    After being told she was taken off the schedule and placed on leave pending investigation, Plaintiff went downstairs and handed Fletcher her badge. Plaintiff gave Fletcher her badge because she was so irate and upset about the retaliation from Martinez and because she would not leave it while being off the schedule.

26.    Plaintiff left and called Human Resources Manager, Kelli Stowe ("Stowe") and explained what happened and why she handed Fletcher her badge so that Stowe was aware of what was going on.

27.    Stowe explained that she pulled the camera footage to review the incident, that her investigation had already been closed with no finding of wrongdoing. However, for reasons Stowe did not understand or which were never stated, Martinez "reopened" the investigation after Stowe had already closed it. The allegations were so unfounded that Stowe did not even give Plaintiff notice of the investigation before she heard about it being reopened by Martinez. Stowe told Plaintiff that she should never have been called in for that meeting because she already conducted the investigation and found that it was unfounded.

28.    After her conversation with Stowe, Plaintiff called Goldblatt to ask him why this was happening and what was going on. Goldblatt stated that Plaintiff needed

to be patient and let the investigation be completed and then she would be put back on the schedule.

29. Plaintiff also spoke with Fletcher that same day and was told that the investigation should be completed within 48 hours and Plaintiff would be put back on the schedule and to stay calm in the meantime.

30. Plaintiff waited a few days and then emailed Kaler asking about the investigation; Kaler then told Plaintiff that she had quit. Plaintiff explained she never quit, that Stowe and her supervisor were aware that she did not quit, and that Plaintiff was waiting for the results of the investigation so she could be put back on the schedule. They then requested a meeting with Plaintiff via Skype. During the meeting Goldblatt and Kaler just kept talking over Plaintiff telling her that she quit and that is the end of it. The meeting lasted around three minutes. Plaintiff proceeded to tell them there was obviously nothing else that they needed to talk about and ended the conversation. It was clear to Plaintiff that she was retaliated against for complaining about the racist culture in Cliantha's St. Petersburg location and discriminated against on the basis of her race, color, and ethnicity.

31. Throughout the EEOC process, Kaler, Goldblatt, and Fletcher claimed they were informed that Plaintiff resigned when she turned in her badge. However, Stowe specifically informed Goldblatt and Kaler in writing the same day Plaintiff turned in her badge that Plaintiff had no intention of resigning as she had been taken off the schedule by Martinez.

32.     Defendant later fired Stowe, who had also complained of the discriminatory work environment. Defendant, and more specifically Goldblatt and Kaler, have a *modus operandi* of retaliating against employees who complain about discrimination by nitpicking performance and trying to pressure them to resign or to lying about the employee resigning to cover up for retaliatory and discriminatory adverse acts. See, e.g., *Stowe v. Hill Top Research, Inc. d/b/a Cliantha Research*, M.D. Fla. Case No. 8:23-cv-025449 (D.E. 1), Plaintiff's Complaint at ¶¶ 26-28 (Nov. 8, 2023).

33.     Plaintiff has had to retain the undersigned counsel to bring the instant action and will incur attorney's fees for said representation.

## COUNT I - DISCRIMINATION
### *(Title VII of the Civil Rights Act of 1964)*

34.     Plaintiff realleges and adopts, as if fully set forth in Count I, the allegations in paragraphs 1 through 33.

35.     Plaintiff was qualified to perform in her employment position at all material times.

36.     Plaintiff is a member of a protected class and was subjected to discrimination based on her race, color, and/or ethnicity.

37.     Plaintiff was subjected to discrimination when she was subjected to a hostile work environment, taken off the work schedule without pay, and ultimately terminated by Defendant for a pretextual reason.

38.    Plaintiff was subjected to a discriminatory hostile work environment based on her race, color, and/or ethnicity by virtue of the acts set forth in the facts common to all counts.

39.    The aforesaid acts and omissions by Cliantha constituted unlawful discrimination based on Plaintiff's protected class status in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*

40.    Cliantha's agent(s) responsible for the wrongful acts against Plaintiff were employed in a managerial capacity and acting in the scope of employment.

41.    Defendant's unlawful actions constitute bad faith, malicious, willful, and wanton violations of Plaintiff's federally protected rights, for which Plaintiff is entitled to an award of punitive damages.

42.    As a direct, natural, proximate, and foreseeable result of the aforesaid acts of Cliantha, Plaintiff has suffered lost wages, pay and future benefits lost employment opportunities, emotional damages, loss of dignity, loss of enjoyment of life, mental anguish, and other pecuniary and non-pecuniary losses.

WHEREFORE, Plaintiff demands a trial by jury and relief in the form of economic damages, reinstatement or to the extent not feasible back pay and front pay, compensatory and emotional distress damages, punitive damages, attorney's fees and court costs, prejudgment interest, injunctive relief and reinstatement, and any other such relief that the Court deems just and proper.

## COUNT II - RETALIATION
### (*Title VII of the Civil Rights Act of 1964*)

43.     Plaintiff realleges and adopts, as if fully set forth in Count II, the allegations in paragraphs 1 through 33.

44.     Plaintiff engaged in numerous complaints concerning discriminatory treatment as described in the facts common to all counts. Plaintiff's complaints concerning discriminatory treatment amounted to protected activity under Title VII of the Civil Rights Act of 1964.

45.     Plaintiff was subjected to a discriminatory hostile work environment based on her race, color, and/or ethnicity by virtue of the acts set forth in the facts common to all counts.

46.     The aforesaid acts of Defendant constituted unlawful retaliation based on Plaintiff's protected activity in violation of Title VII of the Civil Rights Act of 1964.

47.     Cliantha's managerial agent(s) approved the retaliatory treatment against Plaintiff.

48.     Cliantha's agent(s) responsible for the wrongful acts against Plaintiff were employed in a managerial capacity and acting in the scope of employment.

49.     Defendant's unlawful actions constitute bad faith, malicious, willful, and wanton violations of Plaintiff's federally protected rights, for which Plaintiff is entitled to an award of punitive damages.

50.     As a direct, natural, proximate, and foreseeable result of the aforesaid acts of Cliantha, Plaintiff has suffered lost wages, pay and future benefits lost

employment opportunities, emotional damages, loss of dignity, loss of enjoyment of life, mental anguish, and other pecuniary and non-pecuniary losses.

WHEREFORE, Plaintiff demands a trial by jury and relief in the form of economic damages, reinstatement or to the extent not feasible back pay and front pay, compensatory and emotional distress damages, punitive damages, attorney's fees and court costs, prejudgment interest, injunctive relief and reinstatement, and any other such relief that the Court deems just and proper.

## COUNT III - DISCRIMINATION
### *(42 U.S.C § 1981)*

51. Plaintiff realleges and adopts, as if fully set forth in Count III, the allegations in paragraphs 1 through 33.

52. Plaintiff was qualified to perform in her employment position at all material times.

53. Plaintiff is a member of a protected class and was subjected to discrimination based on her race, color, and/or ethnicity.

54. Plaintiff was subjected to discrimination when she was subjected to a hostile work environment, taken off the work schedule without pay, and ultimately terminated by Defendant for a pretextual reason.

55. Plaintiff was subjected to a discriminatory hostile work environment based on her race, color, and/or ethnicity by virtue of the acts set forth in the facts common to all counts.

56.   The aforesaid acts and omissions by Cliantha constituted unlawful discrimination based on Plaintiff's protected class status in violation of 42 U.S.C. § 1981.

57.   Cliantha's agent(s) responsible for the wrongful acts against Plaintiff were employed in a managerial capacity and acting in the scope of employment.

58.   Defendant's unlawful actions constitute bad faith, malicious, willful, and wanton violations of Plaintiff's federally protected rights, for which Plaintiff is entitled to an award of punitive damages.

59.   As a direct, natural, proximate, and foreseeable result of the aforesaid acts of Cliantha, Plaintiff has suffered lost wages, pay and future benefits lost employment opportunities, emotional damages, loss of dignity, loss of enjoyment of life, mental anguish, and other pecuniary and non-pecuniary losses.

WHEREFORE, Plaintiff demands a trial by jury and relief in the form of economic damages, reinstatement or to the extent not feasible back pay and front pay, compensatory and emotional distress damages, punitive damages, attorney's fees and court costs, prejudgment interest, injunctive relief and reinstatement, and any other such relief that the Court deems just and proper.

## COUNT IV - RETALIATION
### *(42 U.S.C § 1981)*

60.   Plaintiff realleges and adopts, as if fully set forth in Count IV, the allegations in paragraphs 1 through 33.

CALCIANO PIERRO, PLLC

61.    Plaintiff engaged in numerous complaints concerning discriminatory treatment as described in the facts common to all counts. Plaintiff's complaints concerning discriminatory treatment amounted to protected activity under 42 U.S.C. § 1981.

62.    Plaintiff was subjected to a discriminatory hostile work environment based on her race, color, and/or ethnicity by virtue of the acts set forth in the facts common to all counts.

63.    The aforesaid acts of Defendant constituted unlawful retaliation based on Plaintiff's protected activity in violation of 42 U.S.C. § 1981.

64.    Cliantha's managerial agent(s) approved the retaliatory treatment against Plaintiff.

65.    Cliantha's agent(s) responsible for the wrongful acts against Plaintiff were employed in a managerial capacity and acting in the scope of employment.

66.    Defendant's unlawful actions constitute bad faith, malicious, willful, and wanton violations of Plaintiff's federally protected rights, for which Plaintiff is entitled to an award of punitive damages.

67.    As a direct, natural, proximate, and foreseeable result of the aforesaid acts of Cliantha, Plaintiff has suffered lost wages, pay and future benefits lost employment opportunities, emotional damages, loss of dignity, loss of enjoyment of life, mental anguish, and other pecuniary and non-pecuniary losses.

WHEREFORE, Plaintiff demands a trial by jury and relief in the form of economic damages, reinstatement or to the extent not feasible back pay and front pay,

compensatory and emotional distress damages, punitive damages, attorney's fees and court costs, prejudgment interest, injunctive relief and reinstatement, and any other such relief that the Court deems just and proper.

## COUNT V - DISCRIMINATION
*(Florida Civil Rights Act)*

68.     Plaintiff realleges and adopts, as if fully set forth in Count V, the allegations in paragraphs 1 through 33.

69.     Plaintiff was qualified to perform in her employment position at all material times.

70.     Plaintiff is a member of a protected class and was subjected to discrimination based on her race, color, and/or ethnicity.

71.     Plaintiff was subjected to discrimination when she was subjected to a hostile work environment, taken off the work schedule without pay, and ultimately terminated by Defendant for a pretextual reason.

72.     Plaintiff was subjected to a discriminatory hostile work environment based on her race, color, and/or ethnicity by virtue of the acts set forth in the facts common to all counts.

73.     The aforesaid acts and omissions by Cliantha constituted unlawful discrimination based on Plaintiff's protected class status in violation of Florida Civil Rights Act, Ch. 760 Florida Statutes.

74.     Cliantha's agent(s) responsible for the wrongful acts against Plaintiff were employed in a managerial capacity and acting in the scope of employment.

CALCIANO PIERRO, PLLC

75.     Defendant's unlawful actions constitute bad faith, malicious, willful, and wanton violations of Plaintiff's statutorily protected rights, for which Plaintiff is entitled to an award of punitive damages.

76.     As a direct, natural, proximate, and foreseeable result of the aforesaid acts of Cliantha, Plaintiff has suffered lost wages, pay and future benefits lost employment opportunities, emotional damages, loss of dignity, loss of enjoyment of life, mental anguish, and other pecuniary and non-pecuniary losses.

WHEREFORE, Plaintiff demands a trial by jury and relief in the form of economic damages, reinstatement or to the extent not feasible back pay and front pay, compensatory and emotional distress damages, punitive damages, attorney's fees and court costs, prejudgment interest, injunctive relief and reinstatement, and any other such relief that the Court deems just and proper.

## COUNT VI - RETALIATION
### *(Florida Civil Rights Act)*

77.     Plaintiff realleges and adopts, as if fully set forth in Count VI, the allegations in paragraphs 1 through 33.

78.     Plaintiff engaged in numerous complaints concerning discriminatory treatment as described in the facts common to all counts. Plaintiff's complaints concerning discriminatory treatment amounted to protected activity under the Florida Civil Rights Act, Ch. 760 Florida Statutes.

79. Plaintiff was subjected to a discriminatory hostile work environment based on her race, color, and/or ethnicity by virtue of the acts set forth in the facts common to all counts.

80. The aforesaid acts of Defendant constituted unlawful retaliation based on Plaintiff's protected activity in violation of the Florida Civil Rights Act, Ch. 760 Florida Statutes.

81. Cliantha's managerial agent(s) approved the retaliatory treatment against Plaintiff.

82. Cliantha's agent(s) responsible for the wrongful acts against Plaintiff were employed in a managerial capacity and acting in the scope of employment.

83. Defendant's unlawful actions constitute bad faith, malicious, willful, and wanton violations of Plaintiff's federally protected rights, for which Plaintiff is entitled to an award of punitive damages.

84. As a direct, natural, proximate, and foreseeable result of the aforesaid acts of Cliantha, Plaintiff has suffered lost wages, pay and future benefits lost employment opportunities, emotional damages, loss of dignity, loss of enjoyment of life, mental anguish, and other pecuniary and non-pecuniary losses.

WHEREFORE, Plaintiff demands a trial by jury and relief in the form of economic damages, reinstatement or to the extent not feasible back pay and front pay, compensatory and emotional distress damages, punitive damages, attorney's fees and court costs, prejudgment interest, injunctive relief and reinstatement, and any other such relief that the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff respectfully demands a trial by jury as to all issues triable as of right.

Dated this 12th day of March 2024.　　　Respectfully submitted,

*s/ Brian Calciano*

R. MICHAEL PIERRO, JR.
Florida Bar No. 013023
BRIAN CALCIANO
Florida Bar No. 108879
*Trial Counsel for Plaintiff*

**CALCIANO PIERRO, PLLC**
146 Second Street North – Suite 304
St. Petersburg, Florida 33701
(727) 217-5400
mike@flemploymentlaw.com
brian@flemploymentlaw.com