UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MICHELLE ALFORD,

    Plaintiff,

v.                                                  Case No. 8:24-cv-00657-WFJ-AEP

HILL TOP RESEARCH
INCORPORATED d/b/a
CLIANTHA RESEARCH,

    Defendant.

_____/

## ORDER

Before the Court is Defendant Hill Top Research, Inc. d/b/a Cliantha Research's ("Cliantha") Motion to Dismiss (Dkt. 10) Counts I, III, and V of Plaintiff Michelle Alford's Complaint (Dkt. 1). Ms. Alford has filed a Response in Opposition (Dkt. 15). Upon careful consideration, the Court denies Cliantha's Motion.

## BACKGROUND

Ms. Alford worked at Cliantha, a medical research facility, for approximately six months in 2021 and 2022. Dkt. 1 ¶ 11, 23, 30. She alleges that over the duration of her employment she observed "the Hispanic employees in the facility openly discriminat[ing] against the African American employees," for example, by using derogatory language or refusing to sit at the same lunch tables. *Id.* ¶¶ 14–16. Ms.

Alford, who is white and Puerto Rican and speaks Spanish, avers that her Hispanic coworkers expected her to participate in this discriminatory behavior because she is also Hispanic. *Id.* ¶¶ 16–17. According to the Complaint, "non-Hispanic employees were not discouraged from speaking with or associating with the African American employees—it was only Plaintiff as a Hispanic employee who was treated worse for socializing with the African American employees, as if Plaintiff were a traitor to the Hispanic group by doing so." *Id.* ¶ 17. Ms. Alford explains that when she associated with her African American coworkers, her Hispanic coworkers would refuse to speak to her. *Id.* ¶ 16.

In March of 2022, Ms. Alford's troubles at work increased. *Id.* ¶ 20. Cliantha got a new manager, Tatiana Martinez, who purportedly only hired Hispanic applicants into new positions. *Id.* ¶ 19. On March 11, 2022, Ms. Alford told Ms. Martinez of her concerns about discrimination at Cliantha. *Id.* ¶ 20. The Complaint alleges that in response, Ms. Martinez began singling Ms. Alford out for criticism. *Id.* ¶¶ 20–21. This was new for Ms. Alford, who had only received positive performance reviews in the past. *Id.* The treatment apparently became so extreme, Ms. Alford began taking photos of her work to contest lies about poor performance. *Id.* ¶ 21.

On March 17, 2022, Ms. Alford attended a meeting with Ms. Martinez and two other Cliantha managers. *Id.* ¶ 22. The three accused Ms. Alford of various

infractions—accusations Ms. Alford maintains were unsubstantiated. *Id.* ¶ 23. Shortly after, Ms. Martinez told Ms. Alford that she would be taken off the schedule indefinitely. *Id.* ¶¶ 24–25. Ms. Alford turned in her badge and called Kelli Stowe, Cliantha's Human Resources Manager. *Id.* ¶¶ 25–26. Ms. Stowe explained that an investigation into Ms. Alford's purported misconduct had already concluded with a finding of no wrongdoing, but Ms. Martinez had reopened it. *Id.* ¶ 27. Ms. Alford followed up with several other members of Cliantha's leadership team. *Id.* ¶¶ 28–29. They told her that the investigation should conclude shortly, at which point she would be placed back on the schedule. *Id.* However, Ms. Alford was not placed back on the schedule. *Id.* ¶ 29. Instead, Cliantha's President and its HR Generalist informed Ms. Alford that by turning in her badge, she voluntarily quit. *Id.*

After exhausting her remedies with the Equal Employment Opportunity Commission ("EEOC") and Florida Commission on Human Relations ("FCHR"), Ms. Alford filed the instant Complaint. *Id.* ¶ 10. It alleges discrimination and retaliation under Title VII of the Civil Rights Act ("Title VII"), 42 U.S.C. § 1981 ("Section 1981"), and the Florida Civil Rights Act ("FCRA"). *Id.* ¶¶ 34–84. Cliantha moves to dismiss the discrimination counts, arguing that Ms. Alford lacks standing to sue and failed to state a claim upon which relief may be granted.

## LEGAL STANDARD

To survive a Fed. R. Civ. P. 12(b)(6) motion to dismiss, the plaintiff must plead sufficient facts to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In considering the motion, the Court must accept all factual allegations of the complaint as true and construe them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008) (citation omitted). The Court may consider "the well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed." *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004) (citations omitted).

## ANALYSIS

For the reasons outlined below, Cliantha's Motion to Dismiss is denied.

**I.     Ms. Alford has standing to bring her discrimination claims.**

Cliantha first argues that Ms. Alford lacks standing to bring her discrimination claims. Not only does Ms. Alford have standing; she also meets the higher burden of being a "person aggrieved" under Title VII.

Article III standing "consists of injury in fact caused by the defendant and remediable by the court." *Thompson v. North Am. Stainless, LP*, 562 U.S. 170, 175–

76 (2011) (citation omitted). The Complaint easily clears this hurdle: Ms. Alford alleges that she was fired because of Cliantha's discriminatory practices, an injury that can easily be remedied by reinstatement or damages.

Distinct from standing is the requirement that a Title VII plaintiff be a "person aggrieved." *Id.* at 870. "[T]his language establishes a regime under which a person may not sue unless he falls within the zone of interests sought to be protected by the statutory provision whose violation forms the legal basis for his complaint." *Id.* (quotation omitted). Cliantha cites several cases in which white plaintiffs complaining of discrimination against their African American coworkers were found to be outside the Title VII "zone of interest." Dkt. 10 at 5–6 (citing *Jackson v. Deen*, 959 F. Supp. 2d 1346 (S.D. Ga. 2013); *Cochran v. Five Points Temporaries, LLC*, 907 F. Supp. 2d 1260 (N.D. Ala. 2012); *Finn v. Kent Sec. Servs., Inc.*, 981 F. Supp. 2d 1293 (S.D. Fla. 2013)). In each of these cases, the plaintiff's alleged injury was interference with his or her right to work in an environment free of racial hostility. *Jackson*, 959 F. Supp. 2d at 1352; *Cochran*, 907 F. Supp. at 1270; *Finn*, 981 F. Supp. 2d at 1298. In contrast, Ms. Alford's purported injury is termination. Dkt. 1 ¶ 30.

The instant Complaint bears less resemblance to *Jackson*, *Cochran*, and *Finn* than it does to *Parr v. Woodmen of the World Life Ins. Co.*, 791 F.2d 888 (11th Cir. 1986). In *Parr*, an employer who admitted to discriminating against African American job applicants and customers failed to hire a white applicant who was

5

married to an African American woman. *Parr*, 791 F.2d at 889. The white applicant filed a Title VII discrimination suit, which the lower court dismissed for failing to state a claim upon which relief could be granted. *Id.* The Eleventh Circuit reversed. *Id.* It reasoned that "[w]here a plaintiff claims discrimination based upon an interracial marriage or association, he alleges, by definition, that he has been discriminated against because of *his* race." *Id.* at 892 (emphasis in original).

*Parr* cited *Whitney v. Greater N.Y. Corp. of Seventh Day Adventists* with approval. In that case, the court noted that:

> If [the plaintiff] was discharged because, as alleged, the defendant disproved of a social relationship between a white woman and a black man, the plaintiff's race was as much a factor in the decision to fire her as that of her friend. Specifying as she does that she was discharged because she, a white woman, associated with a black [man], her complaint falls within the statutory language that she was "[d]ischarged . . . because of [her] race."

*Whitney v. Greater N.Y. Corp. of Seventh Day Adventists*, 401 F. Supp. 1363, 1366 (S.D.N.Y. 1975); *see also Parr*, 791 F.2d at 892 (finding "*Whitney*'s logic irrefutable"). The same is true here.

The instant Complaint alleges that Ms. Alford was terminated because Cliantha disproved of her social relationship with African American colleagues. Thus, her "race was as much a factor in the decision to fire her as that of her [coworkers]." *Whitney*, 401 F. Supp. at 1366. The fact that Ms.

6

Alford avers her white peers did not receive similar treatment only bolsters her pleading. Ms. Alford is a "person aggrieved" under Title VII.

    **II.**    **Ms. Alford's claim is not doomed by her failure to identify a comparator.**

Cliantha next argues that Ms. Alford did not plead facts showing she was discriminated against under Title VII, Section 1981, or the FCRA because she did not identify a comparator. Dkt. 10 at 8–10. All three statutes are analyzed under the same framework. *Harris v. Pub. Health Trust*, 82 F.4th 1296, 1300 n.2 (11th Cir. 2023); *Gogel v. Kia Motors Mfg.*, 967 F.3d 1121, 1134 (11th Cir. 2020).

"[T]he ultimate question in a discrimination case is whether there is enough evidence to show that the reason for an adverse employment action was illegal discrimination." *Tynes v. Fla. Dep't Juv. Just.*, 88 F.4th 939, 941 (11th Cir. 2023). While reference to a comparator may help answer this question, "failure to produce a comparator does not necessarily doom the plaintiff's case." *Id.* at 946.

More fundamentally, "[t]he prima facie case under *McDonnell Douglas* . . . is an evidentiary standard, not a pleading requirement." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002). Even if a plaintiff intends to eventually utilize the *McDonnell Douglas* burden-shifting framework, her complaint need not satisfy every *McDonnell Douglas* element to survive a motion to dismiss. *Id.* at 511; *see also Tynes*, 88 F.4th at 945 (explaining that, "although in other contexts a prima facie case typically does mean enough evidence for a plaintiff to prevail on a particular

7

claim . . . [u]nder *McDonnell Douglas*, a plaintiff who establishes a prima facie case is entitled to a legally mandatory, rebuttable presumption of discrimination). As always, a plaintiff pressing a discrimination claim need only plead "a short and plain statement of the claim showing that [she] is entitled to relief." *Swierkiewicz*, 534 U.S. at 512 (citing Fed. R. Civ. P. 8).

Ms. Alford has done so. She has alleged intentional discrimination by stating that she was wrongfully terminated because she was a Hispanic employee who would not participate in discrimination against her African American coworkers. Dkt. 1 ¶¶ 16–17. She further avers that non-Hispanic employees who associated with their African American peers were not treated adversely. *Id.* Therefore, Ms. Alford has pled sufficient facts to state a claim for intentional discrimination, i.e. that she suffered an adverse employment action because of her race. This is enough to survive the instant Motion to Dismiss.

## CONCLUSION

Accordingly, it is hereby **ORDERED** and **ADJUDGED** that Defendant Cliantha's Motion to Dismiss (Dkt. 10) is **DENIED**.

**DONE** and **ORDERED** at Tampa, Florida, on May 22, 2024.

*/s/ William F. Jung*
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

**Copies Provided To**
Counsel of Record

8